UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO AVILA PEREZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> MCDONALD, et al., <br><br> Defendants. | No. 2:10-cv-01984-MCE-JFM <br><br> **MEMORANDA AND ORDER** |

Fernando Avila Perez, Jr. ("Plaintiff"), a state prisoner proceeding pro se, filed this civil rights action against Defendants St. Andre, Marquez and Brackett (collectively "Defendants"), alleging that Defendants violated Plaintiff's Fourteenth Amendment due process rights by validating him as an associate of the Northern Structure prison gang. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

///

///

///

---

[1] All further references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1

The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. On June 20, 2012, the Magistrate Judge filed findings and recommendations, which were served on all parties and contained notice to all parties that any objections were to be filed within fourteen days. (ECF No. 55.) Defendants timely objected to the findings and recommendations. (ECF No. 56.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this Court has conducted a de novo review of this case. Having carefully reviewed the entire file, including objections, the Court respectfully rejects the Magistrate Judge's findings and recommendations and grants Defendants' motion to dismiss.

**BACKGROUND**

Defendants do no object to the factual background presented in the findings and recommendations but, rather, challenge the legal conclusions reached by the Magistrate Judge. Thus, the Court adopts the following facts as established by the Magistrate Judge. (See ECF No. 55 at 2-3, citing Pl.'s Am. Compl., ECF No. 29.)

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). At all relevant times, Plaintiff was incarcerated at High Desert State Prison ("HDSP"). On April 4, 2009, Defendant St. Andre, an institutional gang investigator, placed Plaintiff on administrative segregation pending investigation into Plaintiff's presumed association with the Northern Structure prison gang. On August 27, 2009, Defendant Brackett, an institutional gang investigator, informed Plaintiff that he was being validated as an associate of the Northern Structure prison gang. That same day, Defendant Brackett disclosed the "gang validation package" to Plaintiff.

///
///
///

1  The validation package showed that three "source points" were used to validate Plaintiff
2  as a gang associate: Plaintiff's tattoo reading "CASTRO XIV," confidential information
3  obtained during contraband surveillance, and information obtained in the debriefing of a
4  former Northern Structure member.  Plaintiff rebutted the gang validation package.
5      Consequently, on September 16, 2009, Defendant Marquez, a special agent at
6  the Office of Correctional Safety, contacted Defendant Brackett and directed him to
7  review the "tattoo source."  Defendants Brackett and Harrison reviewed Plaintiff's
8  central file and decided to include a probation report to support their use of Plaintiff's
9  tattoo in validating Plaintiff as a gang member.  Gang investigators also added another
10 confidential source.  Plaintiff alleges that the tattoo is twenty years old, the information
11 gathered by the informant was false and misleading, and there is no other relevant
12 evidence that Plaintiff is associated with a prison gang.  Plaintiff also alleges that
13 Defendants violated the ex post facto clause by considering Plaintiff's probation report.
14     Plaintiff was ultimately validated as a gang member based on six items of
15 evidence.  The first three items—a CDCR 128B dated August 25, 2009, a CDCR 128B
16 dated September 16, 2009, and a Monterey County Probation Officers Report dated
17 September 20, 2004—concern Plaintiff's tattoo.  Next, there is a confidential
18 memorandum, dated June 17, 2009, containing information provided "during the
19 Debriefing of a validated member of the NS."  Another confidential memorandum, dated
20 February 22, 2008, supports the June 17 memorandum.  The February 22
21 memorandum contains information received from a reliable confidential informant who
22 identified Plaintiff as a " [Building Channel] for the [Northern Structure members] while
23 on Facility C upper yard building 7."  Finally, there is a confidential memorandum, dated
24 October 28, 2008, containing information obtained by prison staff during a "contraband
25 surveillance watch" of a suspected Northern Structure member, during which a roster of
26 inmates associated with the Northern Structure was discovered.  Plaintiff's name and
27 identifying information was on the roster.
28 ///

3

As a result of Plaintiff's gang validation, he was placed in a Segregated Housing Unit. Plaintiff filed an inmate grievance contesting the gang validation. The grievance was screened out as untimely by the High Desert Prison Appeals Coordinator.

## STANDARDS

### A. Standard under 28 U.S.C. § 636(b)(1)

The Court must conduct a de novo review of portions of the magistrate judge's findings and recommendations to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); U.S. v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1). "If neither party contests the magistrate's findings of fact, the court may assume their correctness and decide the motion on the applicable law." Remsing, 874 F.2d at 617.

### B. Standard under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. Id.

///

4

However, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520–21 (1972).  "In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." Karim–Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  A court granting a motion to dismiss a complaint must then decide whether to grant a leave to amend.

1  Leave to amend should be "freely given" where there is no "undue delay, bad faith or
2  dilatory motive on the part of the movant, undue prejudice to the opposing party by
3  virtue of allowance of the amendment, [or] . . . futility of the amendment . . . ."
4  Foman v. Davis, 371 U.S. 178, 182 (1962).  Dismissal without leave to amend is proper
5  only if it is clear that "the complaint could not be saved by any amendment."  Intri–Plex
6  Techs ., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007).

## ANALYSIS

Plaintiff claims Defendants violated his Fourteenth Amendment right to due process because Defendants did not have sufficient reliable evidence to validate him as a member of the Northern Structure prison gang.  The Magistrate Judge found that Plaintiff sufficiently alleged that he was validated as a gang associate based on unreliable information in violation of his right to due process, and that "it is not plain from the exhibits appended to the amended complaint that Plaintiff is not entitled to relief on that claim."  Accordingly, the Magistrate Judge recommended denying Defendants' Motion to Dismiss, and found that an in camera review of the evidence was necessary.  The Magistrate Judge also noted that Plaintiff "claims that use of his probation report as evidence in the gang validation proceedings violates the ex post facto clause.  Defendants have not sought dismissal of this claim."  (ECF No. 55 at 6 n.2.)

Defendants objected to the Magistrate Judge's findings and recommendations on two grounds.  First, Defendants object to the Magistrate Judge's finding that the items used in Plaintiff's gang validation package lacked sufficient indicia of reliability.  Second, Defendants object that the Magistrate Judge erred in finding that Defendants failed to move for dismissal of Plaintiff's ex post facto claim, as the Screening Order did not contain an ex post facto claim.  Defendants thus argue that Plaintiff has no ex post facto claim to dismiss, and to the extent that Plaintiff states an ex post facto claim, it has no merit.  Defendants' objections are addressed in turn.

**A. Due Process Claim**

Prison administrators' decisions that may result in the prisoner's loss of an important liberty interest satisfy due process so long as the decision is based on "some evidence." Superintendent v. Hill, 472 U.S. 445, 455 (1985).  The Hill court consciously declined to adopt a stringent standard and stated that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."  Id. at 456.

> The "some evidence" standard of Hill applies in the present case because California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates.  Although there are some minimal legal limitations, . . . the assignment of inmates within the California prisons is essentially a matter of administrative discretion.  Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).

Plaintiff does not allege that Defendants failed provide him with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." See id. (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1099 (9th Cir. 1986)).  Indeed, Plaintiff's pleadings show that he was provided with notice of the charges against him and the opportunity to present his views to the prison officials, as Defendant Brackett notified Plaintiff that he was being validated as a prison gang member (ECF No. 29 at 3), Plaintiff rebutted the validation package (id. at 5-6), and Defendant Brackett subsequently reviewed the tattoo source (id.).

Because prison officials complied with the above requirements, "the relevant issue is whether there was 'some evidence' to support" Plaintiff's validation.  Bruce, 351 F.3d at 1287.  State regulations require prison officials to show at least three independent source items of documentation to validate an inmate as a member of a prison gang.  15 C.C.R. § 3378(c)(4).

1 At least one of the sources must evidence a direct link between the suspected gang
2 member and a current or former validated gang member. Id. However, the due
3 process standard for upholding a gang validation is not so stringent. The Court does
4 "not examine the entire record, independently assess witness credibility, or reweigh the
5 evidence; rather, 'the relevant question is whether there is any evidence in the record
6 that could the support'" the prison officials' decision to validate Plaintiff. Bruce, 351
7 F.3d at 1287 (quoting Hill, 472 U.S. at 455-56). Even a single piece of evidence is
8 sufficient to support validation under the lenient due process standard. Id. at 1288.
9 Moreover, due process "does not require evidence that logically precludes any
10 conclusion but the one reached" by prison officials. Hill, 472 U.S. at 457.

11 However, even under the "some evidence" standard, the evidence relied on by
12 the prison officials must have sufficient "indicia of reliability." Bruce, 351 F.3d at 1287
13 (citing Toussaint, 926 F.2d at 803). If the information relied upon consists of statements
14 by an unidentified informant, due process is satisfied when "(1) the record contains
15 some factual information from which the committee can reasonably conclude that the
16 information is reliable, and (2) the record contains a prison official's affirmative
17 statement that safety considerations prevent the disclosure of the informant's name."
18 Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). The reliability of statements of
19 unidentified informants may be established by

> (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information; (2) corroborating testimony; (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record; or (4) an in camera review of the documentation from which credibility was assessed . . . . Proof that an informant previously supplied reliable information is sufficient. Id. at 186-87.

25 In this case, the Magistrate Judge found that the sources did not meet the "some
26 evidence" standard because there was not sufficient indicium of reliability for the
27 sources.
28

8

1 | The Magistrate therefore denied Defendants' Motion to Dismiss.  (See ECF No. 55
2 | at 6).
3 | However, the Court respectfully disagrees with the Magistrate Judge's
4 | conclusion that there was not "some evidence" to support the prison officials' validation
5 | of Plaintiff as an associate of the Northern Structure prison gang.  The Court finds that
6 | the Magistrate Judge did not adequately consider the tattoo sources and improperly
7 | applied the Zimmerlee factors to the October 28, 2008, confidential information.  The
8 | Court will address each of the three source points in turn.

**1.     Tattoo**

The sources supporting Plaintiff's tattoo as evidence of his gang association consists of a 128B dated August 25, 2009, a 128B dated September 16, 2009, and a probation report from Monterey County dated September 20, 2004.

The 128B dated August 25, 2009, was written by Defendant Harrison, an Assistant Institutional Gang Investigator ("IGI").  (ECF No. 29 at 14.)  The 128B states that IGI staff observed Plaintiff's tattoo during an interview with Plaintiff on August 4, 2009.  The 128B states that the tattoo is "indicative of membership and or/ association with the prison gang known as Northern Structure."  (Id.)  It describes Plaintiff's tattoo as "the Roman numeral 'XIV' which is the Roman numeral designation for the number '14.'  The number 14 is the alpha-numeric equivalent to the letter 'N' which was adopted by the Northern Structure as a gang identification symbol."  The 128B includes a statement from Defendant Harrison, giving his opinion that "based on [his] training and experience [he knows] by [Plaintiff] having the tattoo of 'XIV' . . . within the prison setting he was required to earn and/or represent his loyalty to the Northern Structure prison gang," and that "by [Plaintiff] having this tattoo he is demonstrating his allegiance to the Northern Structure."  (Id.)

///

The 128B notes that under state regulations, the information is reliable because it was gathered from staff investigation and not from a confidential source. Because the 128B is not based on information obtained from an unidentified informant, the Zimmerlee factors do not apply.

The 128B dated September 16, 2009, reports the contents of the 2004 Monterey County Probation Report. (ECF No. 29 at 29.) The 128B states that Defendant Harrison reviewed the report, authored by Deputy Probation Officer Julie Kenyon, and found that the report contained three statements relevant to Plaintiff's gang validation. (Id.) First, the probation report states that "through law enforcement records, investigating deputies determined that 'Butter' was the street moniker of a known North Side Castroville gang member named Fernando Avila Perez." (Id.) Second, the report states that Plaintiff "received a Disciplinary Action Report when he and inmate Gerardo Perez, a known Norteno gang member, ran outside of their housing dormitory and assaulted two Sureno gang members . . . ." (Id.) Third, the report states that Plaintiff "has tattooing which is closely associated with the Norteno street gang organization . . . [and that Plaintiff] has identified himself as a Norteno gang member to staff . . . ." (Id.) The 128B also includes Defendant Harrison's statement that, from his training and experience, he knows that

> when Norteno street gang members are incarcerated . . . they are required to follow the rules and regulations set forth by the Nuestra Familia and Northern Structure prison gangs. Therefore, even though [Plaintiff] states that he received the tattoo in 1989 . . . by him having the tattoo and functioning on an active Northern Structure yard at HDSP, [Plaintiff] is demonstrating allegiance to the Northern Structure prison gang.

Again, because the 128B is not based on information obtained from an unidentified informant, but rather on information gained by staff from outside authorities, the Zimmerlee factors do not apply.

///

///

### 2. Confidential Information

The Magistrate Judge found that prison staff used a "Confidential Information Form" from October 28, 2008, to validate Plaintiff as a Northern Structure member. (ECF No. 55 at 5.) This memorandum contains information obtained during a contraband surveillance watch of a suspected Northern Structure member, during which prison staff found a roster of inmates associated with the Northern Structure. (Id.; ECF No. 29 at 30.) The roster contained Plaintiff's name and identifying information. (ECF No. 55 at 5; ECF No. 29 at 30.) The Magistrate Judge found that this source did not bear sufficient indicia of reliability because none of the Zimmerlee factors were met. (ECF No. 55 at 5.) However, while this source is labeled a "confidential disclosure," the information did not come from an unidentified informant. Rather, as the Confidential Information Form states, "the information [is considered reliable because it] was gathered from staff investigation and also the notes were never intended to be seen by CDCR staff and IGI staff." Thus, the Zimmerlee factors do not apply in determining this source's reliability.

### 3. Debriefing

Two confidential information disclosure forms, dated February 22, 2008, and June 17, 2009, address information obtained from confidential informants. The February 22 confidential memorandum contains information from a "reliable confidential informant" who identified Plaintiff as a "[Building Channel] for the [Northern Structure] while on Facility C upper yard building 7." (ECF No. 29 at 15.) The June 17 confidential memorandum contains information obtained "during the Debriefing of a validated member of the NS" who identified Plaintiff as "an associate of the NS and holding a position in the Chain of Command . . . [of] Building Channel for buildings 5 and 7 on Facility C HDSP." (ECF No. 29 at 16.)

Because these confidential information forms are based on information from an unidentified confidential source (or sources), the Magistrate Judge correctly applied the Zimmerlee factors and correctly found that none of the factors were met. Thus, these two confidential information disclosure forms do not have sufficient indicia of reliability under the due process standard.

In viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to plead facts sufficient to show that there was not "some evidence" to support his validation as a member of the Northern Structure prison gang. While the Court does "not examine the entire record, independently assess witness credibility, or reweigh the evidence," it is clear, based on the foregoing, that the record contains ample evidence to support the prison officials' decision to validate Plaintiff. Bruce, 351 F.3d at 1287. Specifically, the three sources concerning Plaintiff's tattoo and the October 28 confidential information memorandum each has sufficient indicia of reliability. Each of these sources is therefore adequate to meet the relatively low bar of the due process "some evidence" standard.

### 4. Ex Post Facto Claim

The Magistrate Judge found that Plaintiff "claims that use of his probation report as evidence in the gang validation proceedings violates the ex post facto clause" and that "Defendants have not sought dismissal of this claim." (ECF No. 55 at 6 n.2.) Defendants object to this finding, arguing that the Court's screening order found only that the amended complaint stated "a cognizable claim for relief against the remaining defendants pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b)," but did not point out a viable ex post facto claim. (ECF No. 56 at 2, citing ECF No. 38 at 3.)

While an ex post facto violation based on a gang validation is normally treated as a habeas action, it is possible for an ex post facto claim to be brought pursuant to § 1983.

12

1  See, e.g., Smith v. Doe, 123 S. Ct. 1140 (2003) (§ 1983 claim challenging retroactive
2  application of state Megan's Law under ex post facto clause).  While ex post facto
3  claims that seek immediate or speedier release from state confinement must be brought
4  under federal habeas corpus following the exhaustion of state remedies, Plaintiff in this
5  case seeks to have his gang validation expunged.  (ECF No. 29 at 4.)  Thus, the
6  Magistrate Judge's screening order may well have intended for Plaintiff to proceed with
7  his ex post facto claim under § 1983.  Because the screening order did not clearly
8  eliminate Plaintiff's ex post facto claim, and because Defendants did not brief the ex
9  post facto claim in their Motion to Dismiss, the Court accepts the Magistrate Judge's
10 findings and recommendations on this point.  Thus, to the extent that the screening
11 order provided that Plaintiff presented an ex post facto claim under § 1983, that claim
12 survives the present motion to dismiss.

## CONCLUSION

For the reasons set forth above, the Court respectfully REJECTS the Magistrate Judge's findings and recommendations (ECF No. 55) and GRANTS Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 44) with leave to amend.  However, the Court ADOPTS IN FULL the Magistrate Judge's findings and recommendations regarding Plaintiff's ex post facto claim.  Any amended pleading consistent with the terms of this Memorandum and Order must be filed not later than twenty (20) days following the date of this Memorandum and Order.  Failure to file amended pleadings within said twenty (20)-day period will result in the dismissal of the case without further notice and without leave to amend.

IT IS SO ORDERED.

Dated: September 28, 2012

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE